**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GRAPHICS PROPERTIES HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 12-1394-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GOOGLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**GOOGLE INC.'S NOTICE OF RULE 30(b)(6) DEPOSITION TO**
**PLAINTIFF GRAPHICS PROPERTIES HOLDINGS, INC.**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendant Google Inc. ("Google"), by and through its counsel, will take the

deposition of Plaintiff Graphics Properties Holdings ("GPH") on February 18, 2015 starting at

9:00 a.m., at the offices of Perkins Coie LLP, 3150 Porter Drive, Palo Alto, CA 94304, and

continuing day to day until completed.  The deposition will take place upon oral examination

pursuant to the Federal Rules of Civil Procedure before an officer duly authorized by law to

administer oaths and testimony.  The deposition will be recorded stenographically and/or by

videotape.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff is obliged to

designate one or more officers, directors, or managing agents, or one or more other persons who

consent to testify on its behalf concerning the matters set forth in the attached Exhibit A.

Plaintiff shall identify, for each person designated, the topic on which the person will testify.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

James F. Valentine
Christopher L. Kelley
Victoria Q. Smith
Wing H. Liang
PERKINS COIE, LLP
3150 Porter Drive
Palo Alto, CA 94303
Tel:  (650) 838-4413

Dated:   January 20, 2015
1178625 / 40049

By:   */s/ Bindu A. Palapura*
            Richard L. Horwitz (#2246)
            David E. Moore (#3983)
            Bindu A. Palapura (#5370)
            Hercules Plaza, 6th Floor
            1313 N. Market Street
            Wilmington, DE  19801
            Tel:  (302) 984-6000
            rhorwitz@potteranderson.com
            dmoore@potteranderson.com
            bpalapura@potteranderson.com

*Attorneys for Defendant Google Inc.*

# EXHIBIT A

## DEFINITIONS

1.      "Plaintiff," "GPH," "You," or "Your" means Graphics Properties Holdings, Inc., including past and present officers, directors, employees, agents, consultants, predecessors, subsidiaries, parents, affiliates, and contractors, including, but not limited to, SGI.

2.      "SGI" means Silicon Graphics, Inc., including past and present officers, directors, employees, agents, consultants, predecessors, subsidiaries, parents, affiliates, and contractors.

3.      "Defendant" means Google Inc., including all officers, directors, employees, agents, consultants, predecessors, and subsidiaries.

4.      "'145 Patent" means United States Patent No. 6,816,145.

5.      "'327 Patent" means United States Patent No. 6,650,327.

6.      "'158 Patent" means United States Patent No. 8,144,158.

7.      "Asserted Patents" means the '145, '327, and '158 Patents.

8.      "Related Patent/Application" of any of the Asserted Patents means all underlying patents and patent applications, including published and unpublished applications, abandoned applications and patents, parents, continuations, continuations-in-part, divisionals, reissues, foreign counterparts, and any other patents or patent applications claiming priority to the respective Asserted Patent or to which the respective Asserted Patent claims priority, whether directly or indirectly.

9.      "Accused Product" means any of Defendant's methods, services or products whose use, manufacture, sale, offer for sale, or importation GPH contends infringe any claim of the Asserted Patents.

10.      "Critical Date" means: (1) July 22, 1997 for the '145 Patent; or (2) June 16, 1997 for each of the '327 Patent and '158 Patent.

11.      "Prior Art" means anything that constitutes prior art under any subsection of 35 U.S.C. § 102 or § 103, including without limitation any publication, patent, use, sale, offer for sale, prior invention, knowledge, or other activity.

12.      "Mark" or "Marking" means all actions undertaken to comply with 35 U.S.C. § 287.

13.      "Document(s)" is used in the broadest sense to include everything contemplated by Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure and by Rule 1001 of the Federal Rules of Evidence.  If a draft Document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical Document is a separate Document.

14.      "Thing(s)" is used in the broadest sense to include everything contemplated by Rule 34(a)(1)(B) of the Federal Rules of Civil Procedure.

15.      "Person" or "Entity" and their plural forms include, without limitation, natural persons, partnerships, corporations, associations, and any other legal entities and units thereof.

16.      "Communication" means any transmission of information via any means, whether oral or in writing, including drafts.

17.      The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

## **TOPICS**

1.  The factual and legal basis and supporting evidence for what Plaintiff contends to be the date of invention (i.e., conception, actual and constructive reduction to practice, and any diligence leading to reduction to practice) for each claim of the Asserted Patents.

2.  The research and development associated with the alleged invention(s) of any of the Asserted Patents.

3.  The technology related to the alleged invention(s) claimed in any of the Asserted Patents, including the persons most knowledgeable about such technology.

4.  The identification of each product (including prototypes) made, used, sold, or imported by Plaintiff or its licensees that embodies, that was made by, or that is used when practicing, the subject matter of any claim of the Asserted Patents or any Related Patent/Application.

5.  Sales, revenues, profits, and/or costs relating to any product responsive to topic number 4.

6.  Any assertion by You that any Person or Entity, other than Defendant, infringes or has infringed any claim of the Asserted Patents or Related Patent/Application.

7.  Each disclosure or commercial exploitation of the subject matter disclosed or claimed in each of the Asserted Patents prior to its Critical Date (whether or not secret or confidential), including each use for a commercial purpose, each disclosure to someone other than Plaintiff, and each sale or offer for sale.

8.  The factual and legal basis and supporting evidence for any contention by Plaintiff that secondary indicia of non-obviousness (e.g., alleged copying of the invention by Defendant or others, failure of others, long felt need, unexpected results, commercial success, skepticism of experts, industry acclaim or acquiescence of competitors) exists relating to any claim of any of the Asserted Patents.

9.  Your efforts to advertise or market products based on the technology claimed in any of the Asserted Patents.

10. All licenses and agreements relating to any of the Asserted Patents or a Related Patent/Application.

11. The substance and outcome of all license discussions or discussions relating to other grant of rights (e.g., the terms offered by each party, any discussions regarding terms, the final terms, and any subsequent dispute or modification regarding the terms) relating to any of the Asserted Patents or any Related Patent/Application, whether or not such discussions were internal or external and whether or not a license or other agreement was ultimately offered or executed.

12. Your membership and participation in the Khronos Group, Inc. or the OpenGL ARB, including the termination of GPH or SGI's membership(s) in each organization.

13. Royalties and any other revenue received by GPH, on a per-license and annual basis, associated with the licenses to any of the Asserted Patents.

14. The facts and circumstances concerning all alleged Marking of products with the patent number of any of the Asserted Patents, and efforts to enforce such Marking, on products sold by Plaintiff or Plaintiff's licensees, including but not limited to an identification of all products produced by any party that have been marked with the number of any of the Asserted Patents.

15. Plaintiff's current contention, in light of the Court's September 29, 2014 Memorandum Opinion construing the claims of the '145 Patent, concerning the IBM AnyPlace Kiosk, whether it practiced the '145 Patent, and whether it was Marked.

16. The facts and circumstances concerning all alleged Marking of products with the patent number of the '145 Patent, and efforts to enforce such Marking, on the IBM AnyPlace Kiosk products.

17. Plaintiff's current contention, in light of the Court's September 29, 2014 Memorandum Opinion construing the claims of the '145 Patent, concerning the Motorola Xoom, whether it practiced the '145 Patent, and whether it was Marked.

18. The facts and circumstances concerning all alleged Marking of products with the patent number of the '145 Patent, and efforts to enforce such Marking, on the Motorola Xoom products.

19. The identification of all companies to whom Plaintiff sold products that could be used to drive monitors and the facts and circumstances concerning such sales.

20. Identification of any commercial product that Plaintiff has ever contended practices any claim of any the Asserted Patents.

21. Plaintiff's responses to Interrogatory No. 18 related to the Asserted Patents as set forth in Your THIRD SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF COMMON INTERROGATORIES for cases 12-cv-209, 12-cv-210, 12-cv-211, 12-cv-213, and 12-cv-214 dated August 22, 2013.

22. The factual and legal basis and supporting evidence for each allegation in Your Complaint, Your responses to Defendant's interrogatories, and/or Your responses to Defendant's requests for admission.

23. Any contention by Plaintiff in this litigation or prior litigations brought by Plaintiff that any product practiced any claim of any of the Asserted Patents.

24. Plaintiff's domestic industry allegations in ITC Investigation No. 337-TA-836 or ITC Investigation No. 337-TA-884, including but not limited to Plaintiff's allegations that licensed products practiced any claim of any of the Asserted Patents.

25. The factual and legal basis for Plaintiff's contention in ITC Investigation No. 337-TA-836 that the IBM AnyPlace Kiosk product practiced the '145 Patent.

26. The factual and legal basis for Plaintiff's contention in ITC Investigation No. 337-TA-836 that the Motorola Xoom product practiced the '145 Patent.

27. The prosecution of the Asserted Patents, including without limitation the decision to file the application for any of the Asserted Patents, communications with and documents provided to attorneys prosecuting the Asserted Patents, any decision to disclose or not disclose information to the United States Patent and Trademark Office, and decisions to abandon or revive any of the Asserted Patents.

28. Alternative non-infringing designs to the claimed features of the asserted claims of any of the Asserted Patents.

29. The identification of each Accused Product that Plaintiff alleges infringes one or more claims of any of the Asserted Patents, and the Rule 11 basis for each such allegation, including the facts and circumstances concerning Plaintiff's pre-suit and post-suit diligence, if any.

30. The factual and legal basis and supporting evidence for each act of alleged infringement (e.g., each act of direct infringement by Defendant, each act of direct infringement by a third party, and each act by Defendant inducing or contributing to the third party's direct infringement) for which Plaintiff contends Defendant bears any liability.

31. All facts, circumstances, and evidence that Plaintiff contends supports the allegation in its complaint that Defendant "actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of" any of the Asserted Patents.

32. Plaintiff's infringement contentions served on Defendant.

33. The factual and legal basis and supporting evidence for any contention by Plaintiff that Defendant's alleged infringement is willful.

34. Plaintiff's first awareness of any Accused Product, Plaintiff's first awareness that any Accused Product allegedly infringes any of the Asserted Patents, and the actions taken thereafter relating to Plaintiff's belief that the Accused Product allegedly infringes any of the Asserted Patents.

35. The factual and legal basis and supporting evidence for the relief Plaintiff seeks in the Prayer for Relief in the Complaint, including without limitation any request for damages

5

and injunctive relief (e.g., if Plaintiff seeks lost profits, describe each sale of an Accused Product that Plaintiff contends it would have made but for the alleged infringement and the basis for Plaintiff's contention that it would have made the sale and the amount of profit that it contends it lost from such sale; describe each sale of Plaintiff's own products that it made at a reduced price because of the alleged infringement and the basis for Plaintiff's contention that it would have made its sale at a higher price; describe the royalty Plaintiff contends it is entitled to as a result of the alleged infringement and the basis for the royalty; and to the extent Plaintiff seeks an injunction, explain why Plaintiff believes it is entitled to an injunction).

36. To the extent Plaintiff contends that any license or other agreement is comparable for purposes of a damages calculation in this litigation or otherwise affects a damages calculation in this litigation, all facts and circumstances relating to such license or other agreement.

37. For each of Plaintiff's products that You contend competes with any Accused Product, the revenue and profit data for each such product.

38. Communications by or on behalf of GPH or any other assignee of any of the Asserted Patents with Defendant concerning any of the Asserted Patents or any other patent, patent application, or patent rights.

39. The earliest date upon which GPH contends it provided actual notice of the Asserted Patents to Defendant.

40. The earliest date upon which GPH contends it provided actual notice to Defendant of Defendant's alleged infringement of the Asserted Patents.

41. The earliest date upon which GPH contends that Defendant first became aware of the Asserted Patents.

42. Communications relating to IBM Corp., or any predecessors, successors, subsidiaries, divisions, and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

43. Communications or negotiations relating to the patent cross-license agreement between International Business Machines Corporation and SGI, dated July 1, 1994.

44. The factual and legal basis for Plaintiff's contention that Defendant or Defendant's products are not licensed to practice any claim of any of the Asserted Patents.

45. Statements made by You in connection with any proceedings to enforce the Asserted Patents.

46. Your organizational structure.

47. Your patent or intellectual property licensing policies or practices, including the identity and role of all persons involved in setting or implementing these policies or practices.

48. GPH's history since inception, including without limitation: the formation of GPH; the ownership of GPH; GPH's principal place(s) of business; GPH's past and present corporate and organizational structure; GPH's past and present investors, owners, employees, officers, directors, consultants, and independent contractors; and the identity of any business entity related or otherwise affiliated with GPH.

49. The bankruptcy of SGI, the retention by GPH of any SGI intellectual property assets, and the sale of SGI's assets to any other party as part of the bankruptcy proceedings.

50. GPH's revenues, expenses, profits, and losses.

51. Any valuation of Plaintiff, the Asserted Patents, or Plaintiff's patent portfolio.

52. All ownership and other financial interests in the Asserted Patents or this action.

53. The ownership and assignment history of the Asserted Patents.

54. Your document retention and preservation policies or practice.

55. Your efforts to identify and collect relevant documents and information in this case.